UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BRYANT BRADLEY,　　　　　　　　　　　　　　　　NOT FOR PUBLICATION

　　　　　　　Petitioner,　　　　　　　　　　　　　　MEMORANDUM AND ORDER

　　- against -

　　　　　　　　　　　　　　　　　　　　　　　　　　03-CV-3212 (NGG)(KAM)
CALVIN WEST, Superintendent,

　　　　　　　Respondent.
----------------------------------------------------------X

GARAUFIS, District Judge.

　　*Pro se* petitioner Bryant Bradley ("Bradley" or "petitioner") seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, from his 1999 conviction in Supreme Court, Kings County, for murder in the second degree, assault in the first degree,[1] and criminal possession of a weapon in the second degree.  On September 28, 2005, Magistrate Judge Kiyo Matsumoto issued a Report and Recommendation ("R&R") recommending that the petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 be denied.  Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, this court makes a *de novo* review of all portions of the R&R to which the respondent specifically objected.  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).  Familiarity with the facts of the case and the holdings of the R&R is assumed.

　　After a *de novo* review, this court adopts the R&R in its entirety.

**I.　　DISCUSSION**

　　Bradley seeks a writ of habeas corpus on the grounds that (1) his Fourteenth Amendment

---

[1] Later reduced to assault in the second degree.  People v. Bradley, 294 A.D.2d 373, 741 N.Y.S.2d 701 (2d Dep't 2002).

1

due process rights were violated when the state court permitted the allegedly false testimony of Van Murray; and (2) that his federal constitutional rights were violated when the prosecutor suggested that one of the victims, Lamar Pearson, would be testifying despite allegedly knowing that he would not, and when the court allowed testimony from a police detective regarding his unsuccessful efforts to locate Mr. Pearson.[2]

### A. Van Murray's Testimony

Petitioner's first objection to Judge Matsumoto's R&R is that his due process rights were violated because the Government knowingly put forward Murray's allegedly false testimony. (R&R Objections, dated Oct. 24, 2005, at 1-6.) Specifically, under cross-examination by defense counsel, Murray testified that he had associated with Bradley in New York City beginning around the end of 1997, and Petitioner contends that the prosecutor knew that this was a false statement because Bradley's defense counsel showed her documentation that indicated that he was incarcerated from August 1995 until August 1998. (Id. at 2-3; R&R at 17-19.)

Under the Due Process Clause of the Fourteenth Amendment, "when a prosecutor elicits testimony he or she knows to be false, or allows such testimony he or she knows to go uncorrected . . . the conviction must be set aside unless there is no 'reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Su v. Filion, 335 F.3d 119, 127 (2d. Cir. 2003) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)). The Second Circuit

---

[2] The factual background to the instant petition is fully set forth in the R&R. The following is an abbreviated summary of the relevant facts in order to provide context to this Order. On October 18, 1998, a shooting occurred in which one witness, Van Murray, identified Bradley as a shooter. (R&R at n.4, citing Murray: Tr. 255-59, 291.) Another witness, Lamar Pearson, was shot two times in the leg and went to a hospital, where a police detective questioned him. (Id. at 6-7, citing DiMaria: Tr. 397-98.)

further articulated that a District Court deciding whether false testimony requires a new trial should consider "(1) whether false testimony was introduced, (2) whether that testimony either was or should have been known by the prosecution to be false, (3) whether the testimony went uncorrected, and (4) whether the false testimony was prejudicial in the sense defined by the Supreme Court in Agurs." Su, 335 F.3d at 127.

In her R&R, Judge Matsumoto concluded that no due process violation occurred because Murray's testimony was not intentionally false, and therefore not perjury. (R&R at 21.) Petitioner argues that notwithstanding the fact that Murray's statement was not perjury, that a new trial is required because the prosecutor knew that "Murray's testimony was false before, during, and after he testified." (R&R Objections, dated Oct. 24, 2005, at 3.) However, Petitioner's objection assumes that "false testimony" as discussed in Agurs is distinct from perjury. This assumption is incorrect. The Supreme Court in Agurs held that "a conviction obtained by the knowing use of *perjured testimony* is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the *false testimony* could have affected the judgment of the jury." Agurs, 427 U.S. at 103 (emphasis added). Thus, the Court in Agurs employed the term "false testimony" in reference to a perjurious statement.

Having concluded that testimony must rise to the level of perjury to implicate Petitioner's due process rights under Agurs, it is clear that Murray's testimony was not perjury. (See R&R at 21.) To the degree that Murray's testimony may have incorrectly stated the time period in which he associated with Bradley, this appears to have been a product of a "memory lapse, unintentional error or oversight," which does not establish perjury. See United States v. Bailey, 123 F.3d 1381, 1395 (11th Cir. 1997).

3

Furthermore, the Petitioner's objection must fail because there is no evidence that the prosecutor elicited the testimony.  Under direct examination by the prosecution, Murray stated, and the Petitioner does not contest, that he knew Bradley for about two or three years because they lived in the same neighborhood.  (Tr. 253-54.)  It was defense counsel that probed on cross examination the exact parameters of Murray's relationship with Bradley, and in which Bradley testified that he knew Bradley for about four years. (Tr. 288-89.)  Accordingly, Petitioner has failed to establish that the prosecution elicited the false testimony.

In his objection, Petitioner draws the court's attention to United States v. Wallach, 935 F.2d 445 (2d Cir. 1991), in which the Second Circuit considered on appeal from a District Court trial "whether the perjured testimony of a key government witness requires a reversal of the convictions," and found that the witness's perjury required a new trial.  Wallach, 935 F.2d at 449. The case at bar is distinguishable because unlike Wallach, which arose as a direct appeal from a conviction following a jury trial and conviction in a United States District Court, the instant petition arises under 28 U.S.C. § 2254, "which requires that deference be accorded to state court findings of fact . . . ."  Channer v. Brooks, 320 F.3d 188, 196 (2d Cir. 2003).

I adopt Judge Matsumoto's deference to the state trial and appellate courts' conclusions because there is ample evidence that Murray's testimony needed no correction.  First, the state appellate court upheld the trial court's decision that Murray's statement that he knew Bradley for about four years was not "manifest[ly] false . . . ."  (Tr. 673.)   Significantly, Petitioner does not dispute the fact that Murray did associate with him, or that he was able to identify him.  The crux of his objection to Murray's testimony was that it may have incorrectly stated the time period in which they associated.  The trial court correctly ruled that such an error does not rise to the level

of perjury requiring the prosecutor to correct the testimony.

Furthermore, Murray's testimony was not key to Bradley's conviction. Aside from Murray's testimony, the prosecution offered the testimony of the following: Ruben Cabot, a co-conspirator who testified extensively about Bradley's participation in the shooting, (Tr. 159-246); eyewitness Clinton Quinones who testified that he saw Bradley exit the building with Cabot and co-defendant Snyder firing a gun, (Tr. 352); and numerous police detectives who testified to the discovery of gun casings and bullets in the vicinity of the shooting. (Tr. 302-04, 312, 464-66.) In this regard, Murray's allegedly false statement differs from the perjury considered by the Second Circuit in Wallach and Su, which were found to be key to the prosecution. See Wallach, 935 F.2d at 455 (finding that the only government witnesses offered testimony that was shown at trial through cross-examination to be perjury); Su, 335 F.3d at 129 (granting Section 2254 habeas petition because prosecution's chief witness falsely denied a plea agreement in a case in which the evidence "was not overwhelming either way").

Lastly, unlike the defendant in Wallach, Bradley was aware that Murray's statement was allegedly false, and had the opportunity to correct the information through the admission of his rap sheet or a third party witness. (R&R at 23-24.) Accordingly, I find that Petitioner's due process rights were not violated when the prosecution did not correct Murray's testimony that he knew Bradley for about four years.

### B. Prosecution's Opening Statement

Petitioner also objects to Judge Matsumoto's conclusion that the prosecution's opening

statement did not violate Bradley's constitutional rights.³ Petitioner argues that the prosecutor's opening statement constituted prosecutorial misconduct in that it suggested that Lamar Pearson, a victim of the shooting, would testify at the trial, even though the prosecutor knew that Pearson would not testify. (R&R Objections, dated Oct. 24, 2005, at 6-7.)

In the prosecution's opening statement, the prosecutor twice referred specifically to Lamar Pearson. The first time, she stated that at the time of the shooting, "[t]here were a lot of people that were out there. Lamar Pearson . . . was there." (Tr. 39.) The second time, the prosecutor said that the shootings "injured Lamar Pearson." (Tr. 49.) I find that neither of these specific instances suggest that Mr. Pearson was going to testify at the trial. Rather, the prosecutor explained to the jury that the shooting resulted in the injury of Mr. Pearson, for which Bradley was convicted of assault.

Contrary to Petitioner's objection, there are no implicit suggestions in the prosecutor's opening statement that Mr. Pearson would testify. While it is true that the prosecutor stated that eyewitness testimony would identify Bradley as a shooter, as stated supra, this was a true statement, and cannot constitute prosecutorial misconduct. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). Accordingly, the prosecution's opening statement did not violate Bradley's constitutional rights, because the prosecutor made no false statements to the jury in her opening statement.

---

³ Petitioner also objected to Judge Matsumoto's predicate conclusion that this issue is not preserved for appellate review, because defense counsel did not "object[] to those portions of the prosecutor's opening statement." (R&R at 25, citing Li v. Phillips, 358 F. Supp. 2d 135, 144 (E.D.N.Y. 2005).) As an alternative holding, I adopt Judge Matsumoto's conclusion that because defense counsel did not object to references in the prosecutor's opening statement to Mr. Pearson, that this issue is not preserved.

### C. Testimony Regarding Unsuccessful Efforts to Locate Lamar Pearson

Lastly, Petitioner objects to Judge Matsumoto's conclusion that the trial court did not violate Bradley's constitutional rights when it permitted Detective LaSala to testify regarding his attempts to locate Lamar Pearson. Specifically, Petitioner objects to Judge Matsumoto's conclusion that this issue "rest[s] upon a state evidentiary ruling." (Objection to R&R at 7.) At trial, defense counsel objected to the introduction of LaSala's testimony, arguing that it was irrelevant, and in the alternative, that its relevance was outweighed by its prejudice to Bradley, or would elicit inadmissible hearsay. (Tr. 508-09, 521-22, 526.) The trial court overruled defense counsel's objections and permitted LaSala to testify. The trial court's ruling on the admissibility of LaSala's testimony is clearly an evidentiary ruling. As a result, Petitioner has a "heavy burden" to show that an evidentiary ruling rises to the level of a constitutional violation. Bonet v. McGinnis, No. 98 Civ. 6529, 2001 U.S. Dist. LEXIS 10629, at *7 (S.D.N.Y. July 27, 2001)

In determining whether this evidentiary ruling violated Bradley's constitutional right to a fair trial, I must decide whether the state court's decision violated a state rule of evidence, and if so whether the erroneous state evidentiary ruling "deprived [him] of a fundamentally fair trial." Williams v. Donnelly, No. 00-CV-4445, 00-CV-4447, 00-CV-4448, 2005 U.S. Dist. LEXIS 23222, at *73-74 (E.D.N.Y. Apr. 12, 2005) (internal quotation omitted). I adopt Judge Matsumoto's conclusion that the trial court correctly applied New York's rule of evidence in allowing LaSala to testify about Pearson's whereabouts. New York rules of evidence permit police officers to testify regarding their "efforts to locate the victims . . . ." People v. Smith, 212 A.D.2d 480, 480, 624 N.Y.S.2d 801, 801 (1st Dep't 1995). Furthermore, I do not believe the trial court's application of New York State's evidence rules deprived Petitioner of a fair trial.

7

Accordingly, Bradley's constitutional rights were not violated when the trial court permitted LaSala to testify regarding Pearson's whereabouts.

**III. CONCLUSION**

For the reasons discussed above, this court adopts Magistrate Judge Matsumoto's R&R in its entirety. Bradley's petition for a writ of habeas corpus is DENIED. As Bradley has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000). Pursuant to 28 U.S.C. § 1915(a)(3), the court also certifies that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444 (1962).

SO ORDERED.

Dated: December 1, 2005  \s\
      Brooklyn, New York NICHOLAS G. GARAUFIS
UNITED STATES DISTRICT JUDGE